## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

ERIC P MCCLAIN #391003      CASE NO. 6:17-CV-01643 SEC P

VERSUS      UNASSIGNED DISTRICT JUDGE

DARREL VANNOY      MAGISTRATE JUDGE WHITEHURST

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus (28 U.S.C. § 2254) filed on December 19, 2017, by pro se petitioner Eric P. McClain. McClain is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Louisiana State Penitentiary, where he is serving a life sentence imposed following his December 2010 conviction in the Sixteenth Judicial District Court, St. Mary Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

### STATEMENT OF THE CASE

### I.     Factual Background

The facts, as set forth by the Louisiana First Circuit Court of Appeal, *State v. McClain*, 2013 La. App. Unpub. LEXIS 425, 2012 1766 (La.App. 1 Cir. 06/07/13); 2013 WL 2490364, are as follows:

> On April 9, 2009, St. Mary Parish Sheriff's Officers, led by Lieutenant Scott Anslum, executed a search warrant on a residence at 507 Ninth Street in Franklin. During the ensuing search, officers recovered a large amount of powdered cocaine and crack cocaine from different rooms in the residence, including an area identified as the "middle bedroom." Lieutenant Anslum interviewed defendant's mother, who lived at the searched residence, and she stated that the middle bedroom belonged to defendant.  Lieutenant Anslum asked the defendant's mother to contact him on his cell phone and request that he come to the residence for an interview. Defendant complied. After being informed of his Miranda rights, defendant gave two statements in which he admitted to owning some of the drugs found in the residence. He also authorized the officers to open the safe found in the middle bedroom, where they found $9,950.00 in cash. Testing of the drugs found in the middle bedroom revealed that officers recovered 124 grams of powder cocaine and 12.7 grams of crack cocaine.

Id. at *2-3.

## II.    Procedural Background

The petition, its accompanying memorandum, and exhibits establish that the defendant was charged by a bill of information with possession of a schedule II controlled dangerous substance (cocaine) with intent to distribute, a violation of La. R.S. 40:967(A)(1).  He pled not guilty and, following a jury trial, he was found guilty as charged on December 6, 2010.  Defendant filed counseled and pro se motions for new trial and post-verdict judgment of acquittal, which were denied by the trial court. The state then filed a habitual offender bill of information, alleging the defendant to be a third-felony habitual offender.  He was ultimately adjudicated a third-felony

habitual offender and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.

He filed a direct appeal in the First Circuit Court of Appeal, raising the following four counseled assignments of error: (1) trial court erred in failing to suppress petitioner's first statement; (2) trial court abused its discretion in failing to order a mistrial when the district attorney elicited testimony at trial regarding the trial court's finding at the motion to suppress hearing that defendant's statement was freely and voluntarily given; (3) & (4) Louisiana Constitution that allows for non-unanimous jury verdicts violates the right to a jury trial and the right to equal protection of the laws guaranteed by the Sixth and Fourteenth Amendments [Rec. Doc. 1-4, pp. 1-29]; and the following four pro se assignments of error: (1) trial court erred in failing to suppress his statements; (2) trial court abused its discretion and violated due process by not viewing the two recorded confessions prior to ruling at the motion to suppress hearing; (3) videotaped recordings of his two confessions were illegally redacted, prohibiting the jury from weighing the totality of the circumstances surrounding each statement; and (4) search warrant and application for the search warrant were based on fabrications and fraud constituting intentional misrepresentations to gain illegal entry into his residence [Rec. Doc. 1-4, pp. 30-59].

The First Circuit affirmed the conviction and sentence on January 7, 2013. [Rec. Doc. 1-4, pp. 125-137; *see also State v. McClain*, 2012-1755 (La. App. 1 Cir.

6/7/13) 2013 WL 2490364.]   All issues were addressed on the merits, excluding pro se assignments two, three and four, which the appellate court held were not reviewable on appeal, as they were not raised in the trial court.  Petitioner applied for writs in the Louisiana Supreme Court [Rec. Doc. 1-4, pp. 138-158]; his application was denied on January 27, 2014 [Rec. Doc. 1-4, p. 159; *see also State v. McClain*, 2013-1637 (La. 1/27/14), 131 So.3d 53].  Petitioner sought writs in the United States Supreme Court on April 7, 2014.  [Rec. Doc. 1-4, p. 160]  His petition to the United States Supreme Court was denied on June 23, 2014.  *McClain v. Louisiana*, 134 S.Ct. 2845 (2014).

On May 15, 2014, petitioner filed an application for post-conviction relief, raising the following issues: (1) trial court erred in allowing the introduction of a DVD recorded statement without the proper foundation laid as required by law, and trial counsel was ineffective for failing to object to such an error; (2) a conflict between petitioner and his counsel before and during trial constitutes ineffective assistance of counsel; (3) bill of information was defective; (4) trial court abused its discretion by not viewing the two recorded confessions prior to ruling at the motion to suppress hearing and  trial counsel was ineffective for failing to object to such an error; (5) trial court abused its discretion regarding the videotaped recorded statements of petitioner's confessions which were illegally redacted, prohibiting the jury to weight the totality of the circumstances surrounding each statement made,

and  trial counsel was ineffective for failing to object to such an error; (6) trial counsel was ineffective for failing to file a motion to quash the affidavit for search warrant; (7) petitioner was denied effective assistance of counsel when his counsel failed to request to be provided with the name of the confidential informant whose information was used to obtain the search warrant; and (8) defense counsel rendered ineffective assistance of counsel. [Rec. Doc. 1-3, pp. 1-43]  On June 29, 2015, the State filed "Respondent's Procedural Objections, Motion to Dismiss, Response, and Answer to Petitioner's Application for Post-Conviction Relief," pursuant to which it objected, on procedural grounds, to petitioner's claims 1, 3, 4, 5 & 6, as the claims were not on the grounds listed for post-conviction relief in Article 930.3 of the Louisiana Code of Criminal Procedure, and addressed the merits of claims 2, 7 and 8.  [Rec. Doc. 1-3, pp. 44-48]

The trial court denied petitioner's application "on the merits and procedurally for claims 1, 3, 4, 5 & 6" on July 8, 2015.  [Rec. Doc. 1-3, p. 72] On an unknown date, petitioner filed an application for supervisory writs in the First Circuit Court of Appeal, which was denied on March 7, 2016, under Docket Number 2015 KW 2008, "on the showing made." [Rec. Doc. 1-3, p. 145]  The court noted that petitioner failed to include portions of the district court record that might support the claims in his application for post-conviction relief.  He was instructed to file a new application with that court by May 6, 2016, as supplementation of that writ application would

not be considered. Id. Petitioner presumably re-filed in the First Circuit, as a second application for supervisory writs was denied on June 17, 2016, under Docket Number 2016 KW 0489. He filed a writ application in the Louisiana Supreme Court, which was denied on November 13, 2017, under Docket Number 2016-KH-894. [Rec. Doc. 1-3, pp. 147-148]

The instant petition for writ of habeas corpus was filed on December 19, 2017. Petitioner raises the following claims: 1) trial court erred in failing to suppress petitioner's first statement; (2) trial court abused its discretion in failing to order a mistrial when the district attorney elicited testimony at trial regarding the trial court's finding at the motion to suppress hearing that defendant's statement was freely and voluntarily given; (3) trial court erred in allowing the introduction of a DVD recorded statement without the proper foundation laid as required by law, and trial counsel was ineffective for failing to object to such an error; (4) a conflict between petitioner and his counsel before and during trial constitutes ineffective assistance of counsel; (5) bill of information was defective; (6) trial court abused its discretion by not viewing the two recorded confessions prior to ruling at the motion to suppress hearing and trial counsel was ineffective for failing to object to such an error; (7) trial court abused its discretion regarding the videotaped recorded statements of petitioner's confessions which were illegally redacted, prohibiting the jury to weight the totality of the circumstances surrounding each statement made, and trial counsel

6

was ineffective for failing to object to such an error; (8) trial counsel was ineffective for failing to file a motion to quash the affidavit for search warrant; (9) petitioner was denied effective assistance of counsel when his counsel failed to request to be provided with the name of the confidential informant whose information was used to obtain the search warrant; and (10) defense counsel rendered ineffective assistance of counsel.

Claims 1, 2, 4, 9 & 10 are addressed herein.[1]

## LAW AND ANALYSIS

### I.  Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Claims 3, 5, 6, 7, and 8 of the petition are addressed in a separate Report and Recommendation.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (*quoting Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.    Timeliness

Title 28 U.S.C. §2244(d)(1)(A) provides a one-year statute of limitations for the filing of an application for writ of habeas corpus by persons, such as petitioner,

who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).

The petitioner's conviction became final on June 23, 2014, when the United States Supreme Court died his writ application. His application for post-conviction relief was filed on May 15, 2014. After moving through the Louisiana state courts, his writ application was denied by the Louisiana Supreme Court on November 13, 2017. His petition was filed in this court on December 19, 2017. Thus, this matter is timely.

### III. Plaintiff's Claims

The following claims will be addressed by this Court herein: 1) trial court erred in failing to suppress petitioner's first statement (Federal Claim 1); (2) trial court abused its discretion in failing to order a mistrial when the district attorney elicited testimony at trial regarding the trial court's finding at the motion to suppress hearing that defendant's statement was freely and voluntarily given (Federal Claim 2); (3) a conflict between petitioner and his counsel before and during trial constitutes ineffective assistance of counsel (Federal Claim 4); (4) petitioner was denied effective assistance of counsel when his counsel failed to request to be provided with the name of the confidential informant whose information was used

to obtain the search warrant (Federal Claim 9); and (5) defense counsel rendered ineffective assistance of counsel (Federal Claim 10).

### A. The trial court erred in failing to suppress petitioner's first statement. (Federal Claim 1)

Petitioner argues that his first statement to police should have been suppressed based on his contention that the police told him and his mother that she would be arrested if he did not turn himself in and confess to the possession of cocaine.

La.R.S.15:451 provides that:

> Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.

The State must prove the confession was free and voluntary. In determining whether a confession is voluntary the court should look at the "totality of the circumstances" and decide whether the State has proven beyond a reasonable doubt that the confession was voluntary. *State v. Lavalais*, 685 So.2d 1048, 1053 (La. 1996). An inducement is only one factor in the totality of the circumstances analysis. *State v. Lewis*, 539 So.2d 1199, 1205 (La.1989). Further, before a confession is admissible against a defendant the State must show that it was not given under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. *State v. Holder*, 50,171 (La.App. 2 Cir. 12/09/15), 181 So. 3d 918, 931. Additionally, the State must show that the defendant was advised of his *Miranda* rights. *Id*.

10

The admissibility of a confession is a question for the trial court. *Id*. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. *Id*. *(citing State v. Thibodeaux*, 1998-1673 (La. 09/08/99), 750 So. 2d 916, cert. denied, 529 U.S. 1112 (2000)). Great weight is placed upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. *Id*. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. *Id. (citing State v. Bowers, supra.)* In proving an intelligent waiver of the rights to silence, protection against self-incrimination and counsel, the state need not show that a defendant was aware of the full evidentiary significance of his statements. *Id. (citing State v. Mitchell*, 421 So. 2d 851 (La. 1982).

Petitioner's claim that his statement should have been suppressed was heard by the trial court at a hearing on a motion to suppress and argued on the merits in the First Circuit Court of Appeal. At the motion to suppress hearing held May 4, 2010, the State called Agent Scott Anslum who testified that on April 9, 2010, he executed a search warrant on McClain's residence and recovered a large amount of cocaine and money. [*See* Transcript of April 9, 2010 Motion to Suppress Hearing, Rec. Doc. 18-2, p. 23] Although McClain was not at the residence when the warrant was

11

executed, Agent Anslum had his mother contact him by phone and he came to residence where he was arrested. *Id.* at p. 23. Agent Anslum advised McClain of his Miranda rights and he stated that "he never paid taxes" and that "he was not working." *Id.* at p. 26. Agent Anslum also talked to McClain's mother, Louise (Lois) McClain, who stated that the bedroom where the money and cocaine were located belonged to McClain. *Id.* Agent Anslum also arrested McClain's brother, Terrance McClain, who confessed that he had a bedroom in another portion of the house and that he possessed the cocaine found in it. *Id.* at p. 27. Eric McClain admitted that he possessed large amounts of cocaine and had been selling large amounts of cocaine for about a month. *Id.* at p. 28. He further admitted that the money was his and was derived from the sale of cocaine. *Id* According to Agent Anslum, documents found in Eric McClain's bedroom had his name on them and the clothing found in the bedroom fit the large size of McClain. *Id.* at p. 33.

According to Agent Anslum, McClain came to the residence at the request of his mother. Agent Anslum testified:

Q.     Right, I'll get to that. Now how is it that Eric McClain relocated back to the house at the same time that you happened to be there?

A.     We requested his mom to contact him to come back to the residence.

Q.     Okay, and you made that request through his mother, correct?

A.     Yes, sir.

Q.    Okay, and you all - - and his mother wasn't arrested, correct?

A.    No.

Q.    Okay, is it true that your told Mr. McClain if his - - if Mr. McClain did not come back to the house that his mother would be arrested for the narcotics?

A.    I told him it was possible, wanted him to come back there so I could conduct my investigation and conclude that.

Q.    So you threatened his mother with arrest in order to get Mr. McClain back to the house, correct?

A.    No, I didn't threatened (sic) her. I told her it was a possibility.

Q.    Why would you need Mr. McClain back at the house if he wasn't in possession of any narcotics at the time that you did the no-knock warrant search?

A.    So I could discuss with him about the large amount of illegal narcotics that were located in Mr. McClain's bedroom.

Q.    So the only way Mr. McClain gets involved in this case is when you threaten his mother for him to come back to the house?

A.    No, that's - that's not the only way. He was already involved in this case.  We has already - -

Q.    - - but you said he wasn't - -

A.    - - found narcotics in his bedroom.

Q.    You said – how was he involved in the case when he wasn't even arrested at the house at the time of the arrest?

A.    As I answered before, it's because of the drugs that was in his bedroom that we seized and I requested for Mr. McClain come back to the bedroom – to the residence, so that I could discuss those items that was found in there.

13

> Q.    Did you also did you also in your words 'advise' his mother and advise Mr. McClain that if he did not admit to the narcotics in the house that his mother would be the one charged with the narcotics?
>
> . . .
>
> A.    I didn't tell her in those specific words. I told her it was a possibility that she would be.
>
> Q.    So it was it was an implied threat. It wasn't a direct threat, it was implied? One can - -
>
> A.    - - no, like I answered before, it was not a threat. I told she it was a possibility.

*Id*. at pp. 34- 36.

The trial court denied the Motion to Suppress, stating:

> But when there is a residence and several occupants of the residence, it was a possibility that she would be arrested. So I don't even think that was even a threat in that case. He was stating a fact. But I have to consider all those things in connection with - - together.
> . . .
> The defendant, Mr. McClain, was - - via the search warrant, identified a certain room and by testimony of occupants of the residence; and yes, the implied threat, I don't see as an implied threat. But again, he was Mirandized, the truth voluntarily submitted, I haven't seen the rights form nor have I seen the video statement. I asked y'all is there some? You didn't object and raise any issue as to whether that was not a portion of anything that they secured, that's where I am. An all I have with regards to voluntariness is this witness's statement which I find to be credible and consistent with other things that have been corroborated. So I find that the statement was freely and voluntarily given after he was advised, given his Miranda; as well as the other statements that were given with regards to who's and where.

Id. at pp. 47-48.

14

Concerning the issue of Lois McCain's possible arrest, Agent Anslum testified at trial that he told Ms. McClain that "[o]nce the interview was concluded we would have to make that decision, but I did tell her it was possibility she would go to jail." [Transcript of Jury Trial, Rec. Doc. 20-1, p. 5] At trial the State also introduced and played for the jury the DVD recordings of the statements made by McClain and his mother as State's Exhibits 13, 14, and 15. According to Agent Anslum he spoke to McClain on two occasions, once at the house and once at the Franklin police station and that each conversation was recorded on a DVD and introduced as State Exhibits 13 and 14. *Id.* at p. 43. Agent Anslum also spoke to Lois McCain and recorded her statement on DVD which was introduced as State's Exhibit 15.

The alleged "threats" to Lois McClain are not on the DVD. In cross examination at the trial Agent Anslum testified:

> Q.    Why didn't you keep the video recorder running when you were asking, supposedly asking or in your words requesting Lois McClain to contact Eric McClain? Why don't we have a video of that interaction?

> A.    I didn't know that she had arrived at the home. When I went outside that's when I made contact with her and asked her to speak to me.

> Q.    That's what I'm saying. Why didn't you record that?

> A.    Like I said I didn't know she was there.

> Q.    You didn't record it because you were threatening her.

15

> A.    I explained to her what was going on and while we was walking we discussed her calling. I did not threaten her as you're implying, I requested her.

> Q.    I'm not implying, I'm suggesting that you threatened her.

> A.    I disagree, I did not.

> Q.    Why don't we have a video of that encounter so that we can know beyond a reasonable doubt what the nature of the conversation was?

> A.    I explained to you, I didn't know Miss Lois McClain was outside. I walked outside doing interviews and checking on my guys while they were conducting their duties of (sic) the residence. She was outside. I requested to speak with here (sic) because it was her home.

Id. at pp.43-44.

At the trial, Agent Anslum testified that he did not threaten McClain with the arrest of his mother in order to get him to confess. According to Agent Anslum he believed McClain's first statement that all the cocaine in the home was his was a "phony" statement. Agent Anslum stated:

> Q.    But you said that you believed that he was giving you a phony admission, correct?

> A.    Due to him saying all the cocaine in the house was his. I didn't believe that statement. He states that there was crack cocaine in the residence and I want to get specific with him because I knew that the narcotics that was located in his bedroom –

> Q.    Okay.

> A.    – and he would state where those items were located as I asked in the interview I would know he was being truthful because ultimately I wanted the truth so I could conclude my investigation.

16

Q.    When you threaten to take someone's mother to jail are you telling the jury that's how you get truthful statements out of people?

A.    No, I told him it was a possibility. I didn't threaten him to take his Mom to jail, but I told him there was possibility.

Q.    So the tape that we just watched you can't construe that as a threat?

A.    I don't think so.

Q.    When you said you were going to load his mother up on a truck that wasn't a threat?

A.    I wanted him to be truthful so I wasn't put in a position to have to do that.

Q.    I'm not saying what position you were put in. I'm saying isn't it true that you threatened to take his mother to jail?

A.    That's not true, I didn't. I told him there was a possibility.

Q.    You didn't tell him you can spare your Momma?

A.    Yeah, I did state that and it's true, he could by being truthful.

Q.    And that's not a threat either, correct?

A.    He's putting his Mom in that situation and I didn't want him to do that.

Q.    That's what you, but that's what you told him right? You could spare your Momma, correct?

A.    Yeah, and that was a fact.

Q.    And that's not a threat?

A.    No it was what it was.

Q.    It was what it was.

17

A.    I told him that if he would be truthful he could – not only his Mom but the rest of the family.

Id. at pp. 48-50.

The First Circuit found that the trial court did not abuse its discretion in denying the motion to suppress and found that the statement was voluntarily given. The First Circuit stated:

> After a careful review of the record, we find that the district court did not abuse its discretion in denying the motion to suppress the defendant's statements.  The testimony at the hearing on the motion to suppress and at trial, in addition to the videotaped recording of defendant's statement, clearly establish that defendant was advised of his Miranda rights and that he executed a knowing and intelligent waiver of those rights. Lieutenant Anslum's testimony at the hearing which the district court found to be credible, showed that defendant appeared to understand his rights. The district court also found credible Lieutenant Anslum's testimony that he did not coerce or threaten defendant into implicating himself in order to exonerate his mother. Although defendant may have had a genuine concern for the welfare of his mother it is evident that he was in no way coerced into incriminating himself in order to exonerate her. The test for voluntariness of a confession requires a review of the totality of the circumstances under which the statement was given. We conclude, as did the district court, that under a totality of the circumstances, defendant's confession was voluntary. Therefore the trial court did not err or abuse its discretion in denying the motion to suppress his statement. (Citations omitted)

*State v. McClain,* 2012-1766 (La. App. 1 Cir. 6/7/13), 2013WL2490346, pp. 2-3 (unpublished opinion).  This Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to this claim.

**B. The trial court abused its discretion in failing to order a mistrial when the district attorney elicited testimony at trial regarding the trial court's finding at the motion to suppress hearing that defendant's statement was freely and voluntarily given. (Federal Claim 2)**

At trial, the following exchange took place during direct examination of Lieutenant Anslum, when the State asked whether the trial court had made a determination that Petitioner's statements were made freely and voluntarily:

Q:    Okay. Defense counsel asked a lot about the May 4th, 2010 hearing. Was that a Motion to Suppress and Probable Cause Preliminary Hearing that the judge ruled that day?

A:    I believe so, yes.

Q:    Okay, and did the judge in fact rule that the confession was freely and voluntarily given that day?

A:    Yes, she did.

Q:    And didn't the judge deny the defendant's Motion to Suppress this evidence?

Rec. Doc. 20-1, pp. 56-57.

Petitioner's counsel objected on the grounds that the court had not seen the video tape of the confession and moved for a mistrial. *Id*. at p. 57. The State argued that the defense had "opened the door" on the issue of the trial court's ruling on the motion to suppress on cross-examination so the State should be allowed to go into the issue on re-direct. *Id*.

19

A discussion was held out of the presence of the jury, during which the trial court determined that the State was trying to bolster the reliability of McClain's confession by showing the jury that the court had ruled the confession was freely and voluntarily made. The court sustained the objection, denied the motion for mistrial, and decided to give the jury an Article 775 admonishment. *Id*. at pp. 72-74. Later in court, defense counsel objected to the trial court not granting a mistrial, but agreed with the admonishment. [Rec. Doc. 20-2, p. 10]

The trial court gave the jury the following admonishment:

> Thank you. When we last met., ladies and gentlemen, there was a question or testimony or a statement made about the Courts pre-trial ruling in a certain matter and I need to read you some information about that. The Court's pre-trial ruling on the voluntariness of the statements made by Mr. Eric McClain on May 9, 2009, 2009 is a 1egal requirement necessary before the jury can hear any statement made by the defendant in a criminal matter. That is the extent of that limited impact this statement has on you, as jurors. As a matter of instructions and 1aw, you are obligated to determine the weight or value this statement is to be accorded, if any. In determining the weight or value to be accorded a statement by the defendant, you should consider all of the circumstances under which he testified. Finally, the Court's ruling and was made after relevant testimony of this witness, Lieutenant Anslum, a submission of a crime lab report, an affidavit supporting the search warrant you've heard about and search warrant, which was signed and granted by another judge, in the normal course of business, using the standard appropriate to that process which is probably (sic) cause. As you are aware, the burden that you are obligated to apply is beyond a reasonable doubt. You are also obligated to judge this witness and all others that will come after him based on what you know of their actions and learned of in this courtroom only. Ladies and gentlemen, do you understand? Does anyone need me to read it again?

20

[Rec. Doc. 20-2. Pp. 19-20.]

The First Circuit, finding that this claim didn't have merit because McClain was not prejudiced by the brief reference of Lieutenant Anslum, stated:

> We find that the trial court did not abuse its discretion in denying defendant's motion for a mistrial. Defense counsel objected to the state's questioning almost immediately, and the trial judge carefully crafted and admonition which detailed both the differing legal standard which applied to her pretial ruling and the ultimate obligation of the jury to weigh defendant's statement in light of the totality of circumstances. Accordingly, on the record before us, we conclude that defendant did not suffer such substantial prejudice, as a result of the colloquy between the district attorney and Lieutenant Anslum, that he was deprived of any reasonable expectation of a fair trial.

*State v. McClain*, 2012-1766 (La. App. 1 Cir. 6/7/13), 2013WL2490346, *4.

This Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to this claim.

### C. A conflict between petitioner and his counsel before and during trial constitutes ineffective assistance of counsel. (Federal Claim 4)

Petitioner alleges that there was a conflict between him and his trial attorney and that his attorney was "indifferent" on how his case should be resolved.   [Rec. Doc. 1-2, p. 26]  He contends that he provided his counsel with names and addresses of witnesses who could testify on his behalf at trial, yet his counsel failed to call them for the defense, despite mentioning them in his opening statement.  He asserts that these witnesses would have testified that the drugs found in Petitioner's home

belonged to them.  Next, he alleges that trial counsel did not file various pre-trial motions or interview specific witnesses who could have corroborated certain aspects of the defense theory.  He contends that trial counsel did not visit with him to prepare for trial, nor did she keep him informed of the development of his case.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id*. at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id*. Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (*quoting Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 104 S.Ct. at 2055-56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

In response to McClain's application for post-conviction relief, the State argued:

> Even if called by trial counsel these two witnesses [Terrance McClain and Rickey Webster] would not have testified as projected by McClain and incriminated themselves in the possession of the drugs. Moreover, even if they testified as McClain alleges it would not have affected the outcome of the case since McClain confessed on the DVD that the drugs found were his. Finally, the record of the trial shows that Johnson [trial counsel] was prepared for trial and effectively represented McClain.

[Rec. Doc. 1-3, p. 45]

This claim was denied on the merits by the trial court for the reasons set argued by the State.

This Court agrees with the State's contention that, even if Terrence McCain and Ricky Webster had been called as witnesses they would not have testified and

incriminated themselves the possession of large amounts of cocaine. In fact, Terrence McClain was present at the trial and "took the Fifth" upon advice of counsel.  [Rec. Doc. 20-4]  Moreover, even if these witnesses would testify as McClain alleges, it would not have affected the outcome of the case, as the State introduced evidence that McClain confessed on video that the cocaine found in his residence belonged to him.

With regards to the other claims, the State argues and this Court agrees, that McClain produced no evidence that trial counsel failed to visit with him and no evidence that trial counsel failed to investigate the case. In addition, the record shows that trial counsel filed a motion for discovery, a motion suppress McClain's confession and a motion to suppress the evidence (cocaine and money) pursuant to the search warrant.  Accordingly, any claim that counsel failed to file pre-trial motions is false. This Court finds that the trial court did not err in its findings, and as such, federal habeas relief is not warranted with respect to this claim.

**D. Petitioner was denied effective assistance of counsel when his counsel failed to request to be provided with the name of the confidential informant whose information was used to obtain the search warrant. (Federal Claim 9)**

McClain claims that trial counsel was ineffective for failing to file a motion to have the name of the confidential informant who participated in the controlled buy divulged to the defense.

24

Arguing that the trial court did not err in failing to release the confidential informant's identity, the State relies on the United States Supreme Court of *Roviaro v. United States*, 353 U.S. 53 (1957), in which the Court stated, "[w]here the disclosure of an informer's identity, or the contents of his communications, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, pp. 60-61. Moreover, that court found that there was no "fixed rule" for disclosure and stated "[w]hether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at p. 62. In those cases where the informer is a "mere tipster" cases in the Fifth Circuit hold that "it is settled that the *Roviaro* principle does not require disclosure and production of such an informer." *United States v. Clark*, 482 F.2d 103, 104 (5th Cir. 1973).

The State argues, and this Court agrees, that the evidence in the record shows that a motion to reveal the identity of the informer would have been denied. The search warrant used to search McClain's residence was based on an affidavit from Lieutenant Anslum stating what the informant saw at McClain's residence. It did not implicate the informant in the crime and clearly indicated that the informant did not participate in the crime. As a result, even if a motion had been filed the court would

have denied the motion and it would not have changed the results in this case. As a result, McClain has not shown how he was prejudiced in the trial of his case because of the failure to file a motion for the production of the name the informer.

The trial court denied this claim, raised initially in Petitioner's application for post-conviction relief, for the reason set forth by the State in its opposition to Petitioner's application. The State argued, and the trial court agreed, that Petitioner could not show how he was prejudiced because any motion to produce the name of the informant would have been denied because informant did not play a role or participate in the charge of possession with intent to distribute cocaine. This Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to these claims.

### E. Defense counsel rendered ineffective assistance of counsel. (Federal Claim 10)

In his final claim McClain lists seven ways that trial counsel was ineffective in his case including : (1) failure to object to lack of improper foundation when the State introduced the recorded video statement of McClain's confession; (2) failure to subpoena Terrence McClain and Ricky Webster to testify; (3) failure to file a motion to quash the defective bill of information; (4) failure to object to trial court not quashing bill of information; (5) failure to object to the redaction or alteration to the McClain confessions; (6) failure to file a motion to suppress the search warrant

used in this case; and (7) failure to file a motion to have the State produced the name of the confidential informer who gave the police information which they used to secure a search warrant in the case.

This Court has addressed each of these claims, finding them to be without merit.

## *Conclusion*

**IT IS RECOMMENDED THAT** these claims, Federal Claims 1, 2, 4, 9 & 10, be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana, December 17, 2018.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**